IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MYRNA FELIX, BEVERLY BEARD, and BARBARA LYNN CODY, <br><br> Plaintiffs, <br><br> v. <br><br> SPRINGFIELD CLINIC LLP, <br> an Illinois limited liability partnership, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.: 15-CV-1209<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT

Plaintiffs Myrna Felix, Beverly Beard, and Barbara Lynn Cody, by their attorneys, Jennifer Sender, Tracy Stevenson and Andrés J. Gallegos of Robbins Salomon & Patt, Ltd., for their Amended Complaint against Defendant Springfield Clinic LLP ("SC," or the "Defendant"), an Illinois limited liability partnership, as follows:

### JURISDICTION AND VENUE

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 794, et seq. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred here in this district.

## THE PARTIES

3. Plaintiff Myrna Felix is a 58 year old female with muscular dystrophy, who uses a power wheelchair and is a person with a disability within the meaning of all applicable statutes. Myrna Felix resides in Springfield, Illinois.

4. Plaintiff Beverly Beard is a 71 year old female, living with the effects of polio, who uses a power wheelchair and is a person with a disability within the meaning of all applicable statutes. Beverly Beard resides in Springfield, Illinois.

5. Plaintiff Barbara Lynn Cody is a 58 year old female, living with the effects of muscular dystrophy and brittle bone disease, who uses a power wheelchair and is a person with a disability within the meaning of all applicable statutes. Barbara Lynn Cody resides in Springfield, Illinois.

6. Defendant SC is an Illinois limited liability partnership that owns and operates private multi-specialty medical clinics in and around Springfield, Illinois and central Illinois. In addition, SC provides ancillary services at its clinics, to include, lab, radiology, audiology, behavioral health, physical therapy and many others that complement the medical care delivered by its staff. SC is a recipient of federal financial assistance as it is a participating provider under the Medicare and Medicaid programs.

## DEFENDANT'S CONDUCT

7. Full and equal access to medical care and treatment is critical for persons with disabilities such as the Plaintiffs. Access barriers exist that prevent persons with disabilities from taking advantage of preventative screenings and from getting the care and treatment when

needed. As is the case here, lack of access can be attributed to the pervasive existence of access barriers – i.e., architectural, programmatic, communication and other barriers, to include the lack of (disability-specific) cultural competence among healthcare providers.

8. Despite its long history servicing the communities in which it operates, SC has failed to provide persons with disabilities Plaintiffs the same quality of care as other patients, because of Plaintiffs' disabilities. This unequal treatment occurs because, among other things: clinicians and support staff are not provided the proper training and support on interacting with and caring for persons with disabilities; adaptable, accessible equipment is not available; patients using wheelchairs are rarely weighed, contrary to widely accepted practice standards; patients using wheelchairs are often examined while seated in their wheelchairs when good practice would require them to be examined on a table; transfers of patients with disabilities are frequently risky and conducted without consideration of the individual's needs; and diagnostic procedures such as MRIs, X-rays, ultrasounds and bone density scans are often done only after a patient is transferred with great difficulty and risk by unqualified individuals. One Plaintiff was unable to obtain a mammogram at an SC clinic because the diagnostic equipment was not accessible. Because of the lack of attention to their needs, Plaintiffs report that they are afraid for their personal safety and feel frustrated, humiliated or angry on many occasions.

9. Defendant's denial of full and equal access to Plaintiffs manifests itself in at least two fundamental ways: (1) a lack of accessible medical equipment at SC facilities; and (2) an absence of comprehensive policies and procedures to accommodate the Plaintiffs' disabilities. These violations deprive the Plaintiffs the full and equal access to Defendant's programs, services and activities, in violation of the ADA and the Rehabilitation Act, and places their safety and health at risk.

10. Defendant's medical facilities are characterized by multiple and pervasive barriers to access, and as a result, Plaintiffs face significant difficulty securing health services, do not receive the same level of care as nondisabled patients, and in some cases are denied health services altogether.

11. Defendant has failed to provide accessible medical equipment, including height adjustable examination tables that lower to facilitate the transfer of an individual to transfer from a wheelchair; lift or transfer equipment to facilitate the transfer of Plaintiffs from their wheelchairs or other mobility device to an examination table or examination chair; wheelchair accessible weight scales; and diagnostic equipment that can be made accessible to Plaintiffs, including but not limited to MRI, mammogram, and x-ray machines.

12. Defendant has failed to implement comprehensive policies, practices and procedures to make its facilities and services accessible to Plaintiffs.

13. SC is a "public accommodation" within the meaning of the ADA.

## EXPERIENCES OF THE PLAINTIFFS

*Myrna Felix*

14. Plaintiff Myrna Felix has been treated and seen by doctors at SC since 2004, on average two or three times a year, for a variety of medical issues. At SC, Ms. Felix has encountered pervasive attitudinal barriers and the absence of accessible medical equipment, which have further exacerbated the difficulties Ms. Felix faces when seeking medical treatments there.

4

15. Ms. Felix is able to communicate at a slow rate, but she cannot verbalize words clearly. She requires the assistance of a personal attendant. When her personal attendant is present with her at her SC appointments, the staff always communicates with the attendant instead of with Ms. Felix. When they do communicate directly with Ms. Felix, they act impatient and frustrated.

16. In all of the 10+ years that she has been going to SC, she has never been weighed at any of her SC doctors' appointments. The physicians' staff usually asks her for her weight, which she guesses or they simply use the weight that was recorded from a prior visit. Yet, Ms. Felix is prescribed medication, the correct dosage of which is dependent upon her weight and height. The only time that Ms. Felix is weighed is when she is an inpatient at a hospital as the hospital beds have built-in weight scales. As a result, Ms. Felix has absolutely no idea whether she is losing or gaining weight, or how much weight she is actually losing or gaining.

17. Ms. Felix also is never transferred out of her wheelchair and onto examination tables during her SC doctors' visits; she is examined in her wheelchair. Ms. Felix has never been offered lift equipment at SC to be transferred onto an examination table or diagnostic equipment. When Ms. Felix requires a mammogram or an x-ray at SC, staff members lift her out of her wheelchair and onto the equipment despite her requesting the use of lift equipment. She has no choice but to allow them to lift her as no lift equipment is made available, and is forced to either accept being lifted or not have the test conducted. Ms. Felix fears for her safety when being lifted as she has been hurt at times by SC staff when lifted.

18. Since August 2013, she has made approximately 8 visits to see various doctors at SC, and she was not weighed at any of those appointments, and at no time was she ever offered the option to be transferred out of her wheelchair with lift equipment.

19. Ms. Felix is required to have an x-ray of her kidneys before seeing her SC urologist, Dr. William Severino, and she is always concerned of being dropped or hurt when lifted. On or about March 4, 2014, despite her request for the use of lift equipment, she was manually lifted onto the x-ray table by the x-ray staff. When they transferred Ms. Felix back to her wheelchair, they failed to position her in her wheelchair correctly and Ms. Felix was left off-balance and leaning significantly to one side in a very uncomfortable position for her ensuing conversation with her urologist. Ms. Felix found it difficult to communicate with her urologist as she was struggling with significant discomfort. No assistance was offered.

20. In April 2015, Ms. Felix went to SC's clinic on 1st Street in Springfield, Illinois, for x-rays to follow up on the removal of a kidney stone, which was removed at hospital unaffiliated with SC in Springfield, Illinois, the week prior. Again, at this appointment Ms. Felix was not offered the benefit to use lift equipment to transfer from her wheelchair onto the imaging equipment, instead, she was manually lifted.

21. As Ms. Felix resides in Springfield, Illinois, she intends to continue to receive medical treatment and other healthcare services at SC.

*Beverly Beard*

22. Ms. Beard has been utilizing SC for the past 60 years for her primary care health care needs, and sees doctors at the SC's main campus located at 1025 South Sixth Street and at

6

800 N. First Street in Springfield. As a result of the effects of polio, Ms. Beard cannot walk, has a limited capacity to bear weight and utilizes a power wheelchair as her means of mobility. Ms. Beard is able to transfer independently from her wheelchair onto another surface but only if the surface is low enough.

23. While Ms. Beard has had to see a number of SC physicians over the past 15 years, such as primary care, heart specialists, hearing specialists, and others, she has never transferred onto an examination table at any doctors' office at SC unless she is seen in the emergency room.

24. The examination tables in the SC doctors' offices where Ms. Beard is seen are not height adjustable or do not lower enough so that she can independently transfer. In those doctors' offices, a small stool is provided to help her onto the examination tables. However, she is not able to use it as she cannot stand and pivot onto the exam tables given their height. No lift equipment has ever been offered to assist her. As a result, she is always treated or examined while she remains in her wheelchair.

25. Ms. Beard visits her primary care doctor, Dr. Pramila Venigalla, whose office is located on SC's main campus, every 3 or 4 months, for wellness checks. During those visits, her vitals are checked, but she is never weighed. In fact, she has never been weighed for any of her visits to any of her doctors at SC unless she is admitted as an inpatient.

26. On or about April 2013, Ms. Beard went to SC to see an ear specialist as she had a severe ear infection in her inner ear. She was prescribed antibiotics and pain medication, but was, once again, not weighed to determine if the prescribed dosage was correct. There have been numerous visits over the years where antibiotics have been prescribed to her, but yet she has never been weighed. When they need her weight, they just ask her and she is forced to guess.

27. February 2015, Ms. Beard experienced certain intestinal problems resulting in extreme pain in her abdomen for which she sought care from Dr. Venigalla. She was not placed on the examination table for her physician to examine her. As a result, she ended up calling an ambulance and was required to be admitted to Memorial Hospital in Springfield to provide the care that she should have received at SC.

28. As Ms. Beard resides in Springfield, Illinois, she intends to continue to receive medical treatment and other healthcare services at SC.

*Barbara Lynn Cody*

29. Ms. Cody has been utilizing SC for all of her life for her primary care health care needs, as well as to receive treatment from SC's allergists, pain management specialists, pulmonary specialists and others. Because she is not able to stand, bear weight or ambulate, she utilizes a power wheelchair and requires assistance to transfer from her wheelchair onto other surfaces.

30. At least for the past 5 years, Ms. Cody has not been weighed at any of her SC visits. The last time she was weighed was during a hospitalization at Memorial Hospital in Springfield, Illinois. The patient bed that she was assigned to during that hospitalization had an integrated weight scale. Since then, when SC's doctors and nurses require her weight measurement, they either utilize a previously recorded weight, or they guess or ask Ms. Cody to guess at her weight.

31. In addition, during her examinations by SC physicians and specialists, Ms. Cody is always examined while she remains in her wheelchair, even for gynecological examinations.

32. Since January 2015, Ms. Cody has been treated on numerous occasions for a chronic yeast infection by Dr. Pramila Venigulla, an internal medicine physician, at Springfield

8

Clinic's 1025 S. 6th Street location. During all of those visits, Ms. Cody was never transferred to an examination table and, as a result, did not receive a thorough examination. Dr. Venigulla and her staff have informed Ms. Cody that they do not have lift equipment or personnel to facilitate a transfer onto the examination table. During those visits, Ms. Cody has remained in her wheelchair and Dr. Venigulla merely prescribed her with medication the correct dosage of which is dependent upon accurate weight measurement and height measurement, neither of which have been taken.

33. In September 2015, Dr. Venigulla referred Ms. Cody to a SC dermatologist, Dr. Cassandra Claman, also at the 1025 S. 6th Street location, for issues relating to her yeast infection. During her appointment with Dr. Claman, Dr. Claman's nursing staff chastised Ms. Cody because she could not stand up, disrobe, and get onto the examination table. The staff did not offer her any assistance to get onto the examination table. Instead, she remained in her wheelchair for the examination and was permitted to unbutton her dress. Dr. Claman, however, was not able to perform a meaningful examination, and so she merely prescribed medication and sent Ms. Cody away. She was also not weighed during her visit with Dr. Venigulla.

34. Ms. Cody was also denied a mammogram screening at SC due to the inability of SC staff to transfer her onto the diagnostic equipment. Instead, she was referred to Memorial Hospital for that examination.

## COUNT I

### Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

35. At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189, (the "ADA"), and its

implementing regulations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

- A. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

- B. It shall be discriminatory to subject an individual on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

- C. It shall be discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

- D. It shall be discriminatory to impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b) (2)(A)(i); 28 C.F.R. § 36.301(a).

- E. It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

## **DEFENDANT'S VIOLATIONS**

36. Defendant's acts and omissions alleged herein violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

A. Defendant has discriminated against the Plaintiffs by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the departments and facilities owned, operated and/or contracted for use by Defendant.

B. Defendant has discriminated against the Plaintiffs by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

C. Defendant has discriminated against the Plaintiffs by offering or affording them services that are not equal to those services afforded to other individuals without ambulatory impairments.

D. Defendant has discriminated against the Plaintiffs by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments, where such criteria is not necessary for the provision of health care services.

E. Defendant has discriminated against the Plaintiffs by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to the Plaintiffs and the class members where such modifications would not fundamentally alter the nature of their goods, services or facilities.

F. Defendant has otherwise discriminated against the Plaintiffs.

37. Defendant's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Defendant will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on the Plaintiffs for which the Plaintiffs will have no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), the Plaintiffs are entitled to injunctive relief.

38. Plaintiffs are entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

A. A preliminary injunction and a permanent injunction, prohibiting Defendant from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling Defendant to comply with the ADA;

B. A declaration that Defendant is operating in a manner which discriminates against the Plaintiffs and that Defendant fails to provide access to the Plaintiffs as required by law;

C. An award of attorneys' fees and costs; and

E. Such other relief as the Court deems just.

## COUNT II

### Violation of the Rehabilitation Act, 29 U.S.C. § 704

39. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). The Plaintiffs' claims in Count II arise under the Rehabilitation Act, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended.

40-44. Plaintiffs incorporate by reference paragraphs 3 to 5 of the Section captioned "Parties" above.

45-65. Plaintiffs incorporate by reference paragraphs 14 to 34 of the Section captioned "Experiences of Plaintiffs" above.

66-72. Plaintiffs incorporate by reference paragraphs 6 to 12 of the Section captioned "Defendant's conduct" above.

73. Defendant receives federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

74. At all times relevant, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a), which provide in pertinent part as follows:

   A. "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a)

   B. An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(l)(4).

   C. "Program or activity" means all of the operations of an entire corporation if assistance is extended to such corporation as a whole or the corporation is principally engaged in the business of providing health care services, and any part of the corporation receives federal financial assistance. 29 U.S.C. § 794(b)(3)(A)(i) and (ii); 45 C.F.R. §84.3(k)(3)(i)(A) and (ii).

   E. "Federal financial assistance" means "any grant, loan, contract…or any other arrangement by which the Department [of Health and Human Services] provides or otherwise makes available assistance in the form of…[f]unds." 45 C.F.R. § 84.3(h).

   F. "No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies." 45 C.F.R. § 84.21.

   G. "Accessibility. A recipient shall operate its program or activity so that when each part is viewed in its entirety, it is readily accessible to handicapped persons." 45 C.F.R. § 84.22.

   H. "In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services…(3) Provide a qualified handicapped person with benefits or services that are not as effective as the benefits or services provided to others…(4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a).

75. SC's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners:

   A. Defendant has discriminated against the Plaintiffs by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

   B. Defendant has discriminated against the Plaintiffs by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

   C. Defendant has discriminated against the Plaintiffs by offering or affording them services that are not equal to those services afforded to other individuals without ambulatory impairments.

   D. Defendant has discriminated against the Plaintiffs by imposing or applying eligibility criteria that screen out or tend to screen them out as they cannnot independently transfer from their wheelchairs onto examination tables and chairs where such criteria is not necessary for the provision of health care services.

   E. Defendant has discriminated against the Plaintiffs by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to the Plaintiffs where such modifications would not fundamentally alter the nature of the goods, services or facilities.

   F. Defendant has otherwise discriminated against the Plaintiffs and the class members.

76. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

77.     Defendant's conduct has inflicted injury and damages upon the Plaintiffs, including loss of a civil right, mental anguish, humiliation and mental pain and suffering.

78.     Plaintiffs are entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiffs pray for the following relief:

A.  A declaration that Defendant is operating in a manner which discriminates against the Plaintiffs, and that Defendant fails to provide access to the Plaintiffs as required by law;

B.  An award of compensatory monetary damages;

D.  An award of attorneys' fees and costs; and

E.  Such other relief as the Court deems just.


Dated: October 30, 2015         MYRNA FELIX, BEVERLY BEARD, and BARBARA LYNN CODY, Plaintiffs.


                                /s/ Jennifer M. Sender
                                ─────────────────────────
                                One of Their Attorneys


Jennifer M. Sender (ARDC No. 6207774)
Tracy E. Stevenson (ARDC No. 6207780)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
tstevenson@rsplaw.com
agallegos@rsplaw.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| MYRNA FELIX, and BEVERLY BEARD individually,<br>    Plaintiffs,<br><br>  v.<br><br>SPRINGFIELD CLINIC LLP,<br>an Illinois limited liability partnership,<br>    Defendant. | )<br>)<br>)<br>)  Case No.:  15-1209<br>)<br>)<br>)<br>) |

**CERTIFICATE OF SERVICE**

  The undersigned, being first duly sworn on oath, states that copies of documents required to be served by F.R.Civ.P. 5(b) have been served; that the undersigned served Plaintiff's **SECOND AMENDED COMPLAINT** upon all persons entitled to notice in this cause by placing copies thereof in envelopes properly addressed to each and all of the following:

Lorilea Buerkett
205 S. 5th Street, Suite 700
Springfield, IL 62701

and depositing same in the United States Postal Service mail chute at 180 N. LaSalle Street, Chicago, Illinois 60601 at 4:30 p.m. on the 30th day of October, 2015, with proper first class prepaid postage affixed thereto. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on the date stated immediately above.

              /s/ Jennifer M. Sender

**PROOF OF SERVICE**

  I hereby certify that on October 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

  Lorilea Buerkett
  lbuerkett@bhslaw.com

              /s/ Jennifer M. Sender
              Jennifer M. Sender (ARDC No. 6207774)
              Attorneys for Plaintiffs
              ROBBINS, SALOMON & PATT, LTD.
              180 N. LaSalle, Suite 3300
              Chicago, Illinois 60601
              (312) 782-9000 - Telephone
              (312) 782-6690 - Facsimile
              jsender@rsplaw.com

11K8463